Good morning, Mr. Dunlap. You have reserved two minutes for rebuttal. This is, I guess, because there's a cross-appeal here where each side wants to rebuttal. So we're going to do this twice. Okay. So everybody gets two. All right. So, Mr. Dunlap, that gives you eight minutes to begin, and you may proceed. Thank you, Your Honor, and may it please this Court, good morning. Again, my name is Jeff Dunlap. I'm here on behalf of Key Investment Services LLC to address the denial by the District of Connecticut our motion to vacate the arbitration award and to grant the motion to confirm. As we've argued in our brief, the District Court found that the errors that we pointed out were not present or that you could infer other things. Our argument today, Your Honor, is that the arbitration panel both exceeded its powers and manifestly disregarded the law when the panel entered the arbitration award that it did. And I'd like to address the ways in which it did that. First, I'll start, members of the Court, with the award of $100,000 in the arbitration award in, quote-unquote, damages for an alleged violation of FINRA Regulatory Notice 1039. And that was the third finding in the award. And we argue there in the brief that the panel exceeded its powers and manifestly disregarded the law for several reasons. First of all, there was no claim in the statement of claim filed in FINRA for a violation of a regulatory notice. And there's a good reason for that. Wasn't that heavily litigated, though, whether there was an explicit claim or not? The issue of whether Key violated the notice was heavily litigated during the arbitration. It was certainly mentioned in the arbitration, Your Honor, because Regulatory Notice 1039 is guidance that FINRA gives to broker-dealers about how to complete a Form U5. And the guidance is that the entity must provide complete, correct information, right? Complete, timely, and accurate information on a Form U5. The whole arbitration was about whether Key did that. The argument was that Key did not provide accurate or timely information. That is correct, Your Honor. That was the primary reason for the claimant bringing the claim, because he claimed that his Form U5 was not accurate. Well, you're saying that the form was defamatory, right? It's a defamation case. That's correct. That it was defamatory in nature. That is correct, Your Honor. Right. And so I think your point is that there was no claim for separate damages, the equivalent of statutory damages for a violation of a regulation. That's correct. And the argument continues, there's a good reason for that, because there couldn't be. So I want to get to that. So there couldn't be. So where is the law on that? Because it seems to me what your brief said is there is no authority that says that a FINRA arbitration panel can do this. But I guess that also means there's no authority that says they can't do this. And it seems to me if that's the case, then you lose, don't you? Well, the authority says that there is no private right of action for a violation of any FINRA rule or any regulatory notice. They couldn't bring a separate and independent claim for violating Reg Notice 1039, because the law is very clear that you cannot base a claim on such a violation. If there's a violation, as we pointed out, that would be for FINRA to bring an enforcement action and then to sanction a broker-dealer if there was a violation. So the surprise that we got was when we read the award, and there was a separate award of $100,000 for a violation of a Reg Notice. The claim, as I understand it, the claim was for $723,000 in damages. And what the panel did was it awarded $623,000 as damages, and then it added on this $100,000 for the violation. But it does seem that what the panel was trying to do was to give Mr. Oliver what he had requested, which was about $723,000 in compensatory damages. Well, that was... Given the standard of review of an arbitration award, isn't that at least a barely colorable justification for the award? Well, again, the argument I think that Mr. Oliver made was that was actually not his actual claim, but that was testimony that his expert gave at the arbitration when he was defining the amount of damages that he suffered. And our argument is that DeFerco says barely colorable, you know, plausible, et cetera, et cetera. But then this Court in Hardy came in and said, but wait a minute. But there's a little bit more here. And in number one in the award, it specifically indicates that there were $623,000 even in compensatory damages. And then it goes on in a separate line and says, now we're going to give $100,000... No, that's clearly what it says. I mean, I guess the question is, can we connect the dots, or is that something that we should... I guess we can remand to the panel to clarify what the heck they were doing here. The Court certainly has the authority and the discretion to do that. Our argument here, Your Honor, is that the Court exceeded its powers. I'm sorry. The arbitration panel exceeded its powers by awarding something that was never stated in the statement of claim, a separate claim for a violation of a reg notice. We didn't even feel like we were litigating a separate claim. Most certainly, reg notice 1039 came up as guidance. But it wasn't a separate delineated claim. But it's not offered as a separate claim in the award. It just simply, I mean, it ticks off what the award consists of. And it has compensatory damages and this $100,000 thing that looks like statutory damages, if you were trying to sort of peg it to what courts do in the ordinary courts. We think it might be a different situation, Your Honor, if it said $100,000 in additional compensatory damages. But the problem is that I would suggest that probably both... Why shouldn't we read those words in, given the standard? I mean, in other words, some of the other language is it manifestly disregarding the law? I don't... I think you have a better argument with the point that it exceeds their powers because it's not... There's no prime cause of action there. But even on that one, is it so crazy that we shouldn't allow it? Well, again, on the manifest disregard, when the law is clear that you cannot base a claim on a violation of FINRA guidance or on a violation... But if we were to read into that paragraph in additional compensatory damages, as you just suggested a moment ago, would that be sufficient? I would suggest that that's not there. And the absence of those words, I think, is instructive as the case law says. It doesn't say as additional compensatory damages. Well, what it says is respondent is liable for a violation of FINRA regulatory notice 1039. That's what it basically says. That's right. What I left out is the damages part of that. But there's liability for a violation of array. That's what it says, right? Right. Which it cannot be under the law. And so you say that. But what is the authority that says a FINRA panel can't award damages for violations of a regulatory notice? As we've cited in the briefs, because there's no private right of action to even bring in the first place. If you can't bring an action, you can't get damages as a result. You can certainly mention the guidance. Well, why not? Why can't a panel say I'm going to award you this much in compensatory and punitives and the equivalent of statutory damages? Are you saying you have to bring a separate cause of action? In other words, you can't get those things? We would have to know as respondents, Your Honor, what we're actually defending. That's the problem that we have here is we didn't know we were defending, whether you call it a statutory cause of action or a private right of action for a violation of a regulation. No, I mean, look. If what your client put forward in the form is defamatory, then clearly you violated the regulatory notice, right? You violated 1039 if you put in false and defamatory statements, right? That would be correct. So it's hard to say that you were blindsided by this. What you're blindsided by is the notion that there can be additional damages awarded for that thing. But, again, then it seems to me that we have to inquire whether there's authority that says a FINRA panel doesn't have the authority to do this. You're coming up short of saying that, I think, multiple times. I mean, again. Are you saying that the law is clear that a FINRA panel, a FINRA arbitration panel, cannot award damages for a violation? Well, I think that our contention is that the FINRA panel did because it awarded $623,000. It did. So what's the authority for saying it can't? I guess the argument, Your Honor, is this. The FINRA panel can take into consideration what 1039 says because it's guidance given to broker-dealers about how to complete Form 25. What we're saying is it's pretty clear to us, since it was a defamation case, that the FINRA panel did that when it gave the claimant $623,000 in compensatory damages. What the FINRA panel cannot do, though, is then give a separate award of damages specifically for violation of guidance when what you're doing really is you're allowing them to double recover. Because the first sentence there could only be for defamation. That was really the case, $623,000. So when you give an extra $100,000 on top of that for a violation of a reg notice, now that should have been in the first sentence of award. That's how the panel got it wrong. Well, there could be false aspects of a notice that aren't defamatory. In other words, if somebody put in false dates or somebody put in other false statements that would matter to FINRA but wouldn't necessarily be defamatory, that's conceivable. I'm not saying that's the case here. I understand, Your Honor. And so you're saying if that were the case, a FINRA panel couldn't award damages based on those other false statements or those other violations of a reg? The FINRA panel could take that into consideration because it's the standard that the FINRA regulator imposes. But then the panel has to look at the defamation law to determine if there's been a false statement of fact that's been published, et cetera, et cetera. And obviously in our briefing, we argue that the panel manifestly disregarded the law when it granted damages on the defamation case. I see I'm over. I did reserve. I'll address. Two minutes. Okay. Thank you, Your Honor. So thank you. We'll now hear from Mr. Dobin. Am I pronouncing that right? Yes, Your Honor. Okay. Mr. Dobin, you're reserving two minutes, I guess, on your cross-appeal point, which is post-judgment interest, right? Yes, Your Honor. Okay. So you've got eight minutes to respond to whatever other points you have. May it please the Court. Your Honor, my name is David Dobin from the law firm of Cohen & Wolfe in Bridgeport, Connecticut. I'm here with my partner, Rick Slavin, and my client, Josh Oliver, is here as well. We're requesting that the Court affirm the district court's confirmation of the award. So the other side does cite quite a few cases in its brief to the effect that there's no private cause of action for violating one of these notices. How do you respond to that? Why is that not exceeding the arbitrator's powers? Well, for two reasons. The first is it doesn't the issue, the award of the damages and the finding of a violation of 1039, those were issues that were heavily litigated in the case. And, in fact, Key Investment Services offered as an answer that it had acted in accordance with similarly situated persons. So the issue itself was absolutely litigated. What the panel, what Key Investment Services also did not do when 1039 was put into evidence, did not object or say that the panel cannot award damages based on 1039. With respect to a private cause of action, here the ---- Well, I mean, was there specifically a request made for damages for a violation during the arbitration? I mean, you said the request ---- But there would have been no reason to object unless the assertion was made that there should be an award for violating the notice. Well, the request was made for compensatory damages, the 723,000 of which was a portion. The request was made for damages for violation of the notice. Only in the context of the defamation claim, Your Honor. You haven't answered my question. How do you respond to the argument that there's no private cause of action for damages for a violation and that, therefore, by awarding damages for such a violation, the panel exceeded its authority? It's the response, Your Honor, is that no private cause of action was asserted. The law, we don't contest that a private cause of action, if it had been asserted, and that was that it doesn't exist. We don't believe that. We'll concede that it doesn't exist. But for purposes of reviewing the panel's award, the Court has held that as long as there's a plausible reading for the award that is then justified by the law in effect. I understand that. What's the plausible reading here? The plausible reading here is that the panel intended to impose liability for damages on key investment services on the defamation claim. And that's just because the math kind of adds up? It's not only because of the math. Okay. What else? In the award, the award identifies the relief requested as compensatory damages as a claim for and identifies in the case summary that this is a claim based on defamation. And then in the award section itself, the court is the panel says after considering the pleadings, the testimony and evidence presented at the hearing and any post-hearing submissions, the panel has decided in full final resolution of the issues submitted for determination. This is not — If you are right, why wouldn't the panel have said in Paragraph 1, respond to this liable for and shall pay $723,000 instead of saying $623,000 in compensatory damages? A reasonable and a plausible reading of this award is that the — all of these claims, all of these amounts that are awarded here are on the claim for defamation and these are the issues decided. The use of the word compensatory damages for $623,000 does not mean that the fact that the word compensatory damages is not used in Paragraph 3 means that those are also not compensatory damages. That's the whole reason for why they broke it out this way. The plausible reading would be that they wanted to make clear in their award that FINRA regulatory notice 1039, which was an issue that was decided by the panel and was submitted to the panel by the parties, was in fact violated.  The regulatory notice was an issue? It was an issue that — I'm sorry. I didn't mean to interrupt. No, go ahead. Key investment services offered as a special — as their affirmative defense that they complied with what they were supposed to do. In our post-hearing brief and in the decision — in the proceeding itself, we submitted evidence of regulatory notice 1039. We also offered — and we also questioned key investment services' chief compliance officer who would sign these Form U-5s about the regulatory notice 1039, and she admitted that it's the Bible and the requirements are that she — that it's supposed to be accurate and timely updating. 1039 — No, no. I don't think there's any dispute about all that. But the damage — you're saying that the damages were all for defamation, right? The compensatory damages are all for defamation, and yet Paragraph 3 of the award section says that the Respondent is liable for a violation of the reg. And so it's not tethered to compensation. It's not tethered to even harm. It seems — it looks to me, like I said, it looks like a statutory damage. Well, a plausible reading — we contend that a plausible reading is that in the entire section of the award, other than saying that there's defamatory nature, they don't limit the claim. But the only claim that was there was the defamation claim. And so a plausible reading identifies — when taking into account a review of the record and a review of the language of the award, is that all of these were compensatory — these were all compensatory damages for defamation in addition to punitive  Well, these were all, meaning Paragraph 1 and Paragraph 3. I'm sorry, yes. Paragraph 1 and 3. Nothing else, right? No. Paragraph 1 and 3 were compensatory damages. And the panel also found that there was a violation of Regulatory Notice 1039. Do you agree that the panel could not award damages for a statutory violation? It sounds like you're conceding that. I'm conceding that there was no private right of action that was asserted. I mean, putting aside defamation for the moment, if this were just a straight-up claim for a violation of the notice, could the panel award damages in that instance? My response is that based on the deferential standard to the panel, if the panel wasn't made aware of law that completely ruled it out, then I would say that the panel under the Federal Arbitration Act is allowed to award statutory damages. If law hasn't been — and that's the standard of manifest disregard of the law is that a law was made clear to the panel, and the panel disregarded that. It has to be made clear in the arbitration, or as a general matter, with all these cases saying there's no private right of action? I believe it has to be made — has to be so obvious if it's not made clear by the parties. And here it was not made clear by the parties, nor is it obvious that the panel cannot award statutory damages. So your argument is that there's no private right of action for these damages, but a FINRA panel might have the authority to just gratuitously bestow damages on the plaintiff for violating the right. But that's not clearly against the law for them to do that. Unless they're aware of a law that absolutely makes that unclear, then it's not a manifest disregard for the law. Even if the statute — even if statutory damages and the private cause of action damages are not recoverable, the reading of the award, taking into account the evidence, makes clear that there is a plausible reading finding defamation and punitive damages and attorney's fees that the district court gleaned from the record and the district court's review of the record itself is also subject to clear argument. Well, I mean, it seems like we're all kind of groping to figure out what happened in paragraph 3. Is there any objection to us sending it back to the panel and say, just tell us what you're doing here? Yes. The objection is that what the Federal Arbitration Act asks a reviewing court to do is determine whether there's a plausible reading. And there is a plausible reading by identifying the claims — The finding says we're not allowed to sort of make them up when the district — when the panel has given its reading and it's not the one that you're — it's not the one you're offering. You seem to be asking us to find an alternative basis that the panel didn't find. No, Your Honor. I'm — I'm asking the court to — to look at, even if there's some confusion about what the — what the intent here was. There is a plausible reading that is clear and definite and capable of being enforced by the district courts. And Hardy was faced with a different situation where you looked at the award, and the award stated one possible basis of liability that could be — that could be imposed on that particular defendant. And all the parties agree that there would be zero liability on that defendant if that's the sole basis. And the court in Hardy also looked at other — cited the other Second Circuit case of America's Insurance Company. And America's Insurance Company, as well, focuses on this question of — of whether the parties asked the court — asked the panel to do something, whether the panel itself — Well, the parties really didn't ask for damages based on a violation of FINRA Reg 1039, right? You didn't ask for that. What we asked for was — Well, no, just — if you didn't ask for damages based on a violation of the reg. Other than for defamation — You asked for damages based on defamation. Yes. We asked for damages based on defamation. And — I believe you were as confused by paragraph 3 as your adversary. No, Your Honor. And the reason why is because the award itself, it's not a — a reasoned award. Neither party asked for a reasoned award. Oh, I get that. And a plausible reading in where — just because they identify issues and amounts, which include damages, for — that were adjudicated in part of the — of the complaint — part of the — of the hearing, and clearly identifies elsewhere that there were — that there was a claim for compensatory damages and a claim for defamation, reviewing the entire record — But you're asking us to read in the word compensatory to paragraph 3. I'm — It seems to me exactly what you're asking us to do. No. I'm — I'm asking — what I'm asking the Court to do is — is look at — at the — at the award and find that even if there's no private cause of action, even if it is — even if it's unclear, informed by the record, which shows that there was a compensatory damages claim, that there — and that was — it was for defamation, and the evidence was for $723,000, that the award — that this Court, when reviewing the award, shouldn't be looking for ways to overturn it. The Court should be construing the award in a way to make it affirm, for it to be confirmed. And in all of the cases, including Hardy, where the courts remanded back to the — back to the panel, there was some — it was an indefinite judgment. It was indefinite. The outcome was indefinite. The — the outcome was ambiguous. And —  But here it's not clear whether this is an exercise of authority that exceeds the authority under — under law or under the arbitration agreement, isn't it? I mean, I thought you just said that if — No. No, that if the finder panel has no authority to award statutory damages, and this is the equivalent of statutory damages, that would be exceeding its authority, no? If the — Let's put it this way. If paragraph 3 says, Respondent is liable for and shall pay the sum of $100,000 in statutory damages for violation of FINRA Reg. Notice 1039, that would exceed the panel's authority. Would you agree? I'm just adding the word statutory before damages. I wouldn't concede that it is — No. I wouldn't concede that it's not within the scope of them because, again, because it has not been made clear that that's not permissible. And that's the standard for manifest disregard. And the issue was, in fact, submitted to the panel. And because the outcome here is clear, that there was an award of damages against key investment services that is capable of being enforced, whether under Hardy and all of its — its progeny, there's no ambiguity and it's — and it's a definite award that can be enforced. All right. Did you return to the cross-appeal? Yeah, shortly. Quickly, the district court's judgment did not expressly include an award of post-judgment interest. So the cross-appeal is limited to asking this Court to order the district court to expressly include it or to deem that the district court judgment includes post-judgment interest. And that is a statutory amount. I mean, we could do that today. There's no math. Right. That is a — well, there's math only in terms of the days and looking at the — Right. But the rate is set by law. The rate is set by law and refers to what's published by the Board of Governors. The parties could do the math, right? Yes. If we said the judgment is deemed to include. Yes. Thank you very much. Thank you. All right. Mr. Dunlap, we'll hear from you for rebuttal, I guess, on all the points. Yes, thank you. And in my two minutes, members of the panel, I'd like to address the award of nearly $300,000 in attorney's fees. In this particular case, there was no contract claim. There was no statutory claim. And the panel, once again, in the arbitration, was very, very clear in number five in the award. And it said, that any and all claims for relief not specifically addressed herein, including any requests for punitive damages, are denied. Because it said no punitive damages, it then naturally said, given what the law is, that there was no malice here. Look, you might have some traction there, but for the fact that the panel cited the cases it was relying on for the attorney's fees. That is correct. And I will tell you, I've read those cases backwards, forwards, and upside down, and I cannot find the law in any of those cases. The 1978 case, the 2009 or 2015 case, which allows an arbitration panel, when there's no basis for punitive damages, and they specifically state that, Hardy says you can't come in and come up with a separate and distinct basis then, because the panel already said no punitive damages. There's punitive damages and there are attorney's fees, right? Correct. So, I mean, in some places, punitive damages are not limited to attorney's fees. Do you agree with that? I do agree with that. And so isn't paragraph five of the award simply just sort of a belt and suspenders point, saying that anything and everything else that's not addressed herein is denied? It's just, I mean, it's basically suggesting, it seems to me, that punitive damages beyond what we've already expressly covered with respect to attorney's fees are not being awarded, they are denied. The problem with that is that there was no other basis to award attorney's fees, because there was no finding of malice by the panel in its award. There was no panel to make specific findings on this stuff, right? We argued that there... We argued that there was no arbitration award that included recitation of facts and findings. That is correct, Your Honor. But we did argue at, in closing... So just explain to me, how could attorney's fees be awarded without, citing the cases cited, without a finding that there was malice? As I read those cases... Malice, right? As I read the cases, you have to find malice. And when the panel says no punitive damages, you need to find malice to find punitive damages. And there is no mention of the word malice anywhere in the award. So it was a manifest disregard of the law, and they exceeded their powers by giving $294,000 in punitive damages. It seems to me this is a really opportunistic argument based on the language of Paragraph 5. You're trying to suggest that Paragraph 5 means that they didn't do what they said they did in Paragraph 2. That's really what you're arguing. I think it's a combination of what Paragraph 5 says, Your Honor, and the cases that they cited specifically in Number 2 to support their argument or their decision that there should be $294,000. Again, you know, those cases do not support that award. They just don't. One of them is a First Amendment case. One of them talks about there has to be, you know, malice shown. And the other one talks about the standard for defamation. I just ‑‑ I racked my brain to try to figure out how any of those or a combination of all three support an award of attorney's fees under these facts in this record. Now we're getting into the facts, right? I mean, you're not allowed to do that. We're not scouring the record to figure out whether there was a good argument or a good reason for them to find malice. It's actually manifest disregard of the law. Those cases set forth the law, and I suggest ‑‑  So that's the law, and you're saying that that being the law, there's no facts in the record that support that finding. That's what you're arguing. Well, I'm saying when they say pursuant to these three cases, there has to be some connection. There has to be some bridge from what happened in our arbitration to what happened in those cases. If that law in those cases doesn't support in any way, shape, or form their award, then they're ‑‑ The law doesn't support it? The law is very clear. The law is what it is. You're saying the facts don't support it. There's not sufficient facts that would support a finding of malice. And that's not the purpose of an appeal of an arbitration award, right? We're not here to advance that. No, I'm not arguing that. I'm just saying ‑‑ Connecticut law permits the award of punitive damages to cover litigation expenses. Would you agree with that? In part, yes. And isn't that what the panel is doing here? We're going to cover the litigation expenses as punitive damages in citing these cases that support that. But in the face of saying it is not going to award any punitive damages, that's the problem. They're doing it as attorney's fees. Well, as Hardy says, if the panel says something contradictory, then it's a reach to try to find something else. But paragraph 5 says, any and all claims for relief not specifically addressed herein are denied. And so paragraph 2 was specifically addressed herein, isn't it? It was because it was delineated above.  Do you challenge the punitive ‑‑ I'm sorry, the post-judgment interest? We do not. We do not, Your Honor. You agree that's just a formula. We could do that ourselves. That is correct. Okay. Mr. Dobin, you've got two minutes for rebuttal. I guess really on just that point, which is the post-judgment interest. I can't imagine what you'd be rebutting. No, Your Honor. I have no more rebuttal. Thank you. Okay. Well, interesting case. Well argued. Thank you. We'll reserve decision.